## Cunningham's Devisees *vs.* Cunningham's Heirs.

### APPEAL FROM CASEY CIRCUIT.

Case 4.

PET. EQ.

18bm 19
119 309

1. The validity and effect of a will, dated before the Rev. Statutes took effect, must be determined by the laws previously in force. *Rev. Stat.* 697, *chap.* 106, *sec.* 26.

2. The object and design of the 20th *sec.* of *chap.* 106, *Rev. Statutes, page* 696, was not merely to fix a rule of construction, but to alter the legal *effect* of a residuary devise, so that a legacy lapsing shall pass as in case of intestacy, and not as heretofore to the general residuary devisee; wherefore it is embraced by the provisions of *sec.* 26*th, Ibid.*

3. Before the Rev. Stat. took effect, the residuary legatee was entitled to whatever personal estate (*aliter* as to real estate) might fall into the residue by lapse, invalid disposition, or other accident. *Williams on Executors, vol.* 2, 1250; *Kent's Com. vol.* 4, 541, *side page; Jarman on Wills, vol.* 1, 304, *note* 1, *page* 520; *Cambridge vs. Rouse,* 8 *Ves.* 25. For the reason, see *Williams on Executors, vol.* 2, *page* 1250.

4. A residuary bequest of personal estate, before the Rev. Statutes took effect, carried not only everything not disposed of, but everything that in the event turns out not to be disposed of. *Cambridge vs. Rouse,* 8 *Ves.* 25; *Taylor vs. Lucas,* 4 *Hawks* 215; *Davis vs. King,* 2 *Ird. ch.* 205; *Vick vs. McDaniel,* 3 *How. Miss.* 337. Very special words are necessary to change the operation of this rule. *Bland vs. Lamb,* 2 *Jac. and Walk.* 406.

5. Testator bequeathed to the wife one-third part of his personal estate, and the other two-thirds to residuary legatees; the bequest to the wife lapsed by her death before the testator. Held, that the personal property bequeathed to the wife becomes a part of the residuum, and passed under the will to the residuary devisees.

6. The guardian of C. agreed with C.'s grandfather to resign as guardian that the grandfather might be appointed in his place, and thereby acquire control of the person and estate of C.; in consideration whereof the grandfather agreed that he would give to the ward C. a child's part of his estate. Held—such a contract is not enforceable, is against the policy of the law, and cannot be countenanced in a court of justice.

CUNNINGHAM
vs.
CUNNINGHAM.

[The facts of the case are stated in the opinion of the court.—REP.]

Dec. 24, 1856.

Judge SIMPSON delivered the opinion of the court.

As the wife of the testator died in his lifetime, and the devise to her thereby lapsed, not being embraced by the act of 1839, (3 *Statute Laws*, 400,) which applies only to children and grand children, the question presented under the will is, whether the personal estate included in the devise to her shall pass under the residuary clause contained in the will, or shall pass as in case of intestacy?

In order to determine this question it will be necessary to decide, whether the construction and legal effect of the will are to be governed by the Revised Statutes, or by the pre-existing law.

1. The validity and effect of a will, dated before the Revised Statutes took effect, must be determined by the laws previously in force. *Rev. Stat.* 697, *chapter* 106, *sec.* 26.

The will is dated in February, 1851, and the testator died in 1853. It was made before the Revised Statutes took effect, and by the 26th *section* of the chapter on wills, *page* 697, it is expressly declared, that the preceding sections of that chapter shall not extend to any will made before the chapter takes effect, but the validity and effect of such will shall be determined by the laws previously in force.

The 20th *section* of that chapter is the one relied upon to sustain the position, that the estate devised to the testator's wife is not included in the residuary devise, but passed as in case of intestacy. And it is contended that this section has no operation on the validity and *effect* of a will, but only on its construction, and is not therefore embraced by the provision contained in the 26th *section*.

2. The object and design of the 20th *sec.* of *chap.* 106, *Rev. Statutes*, *page* 696, was not merely to fix a rule of construction, but to alter the legal *effect* of a residu-

It is sufficient answer to this argument to say, that the *effect* of a will must, in a great measure, depend on its construction, and therefore that any law which changes a rule of construction, that applies to and governs any of its provisions, does, to that extent, determine the legal effect of the will. The object and design of the 20th *section*, however, was not merely to fix a rule of construction, but it was to

alter the legal effect of a residuary devise, so that where a legacy should lapse it should not belong, as heretofore, to the general residuary devisee, but should pass as in case of intestacy.

We are therefore clearly of opinion, that the construction and legal effect of this will must be determined, not by the Revised Statutes, but by the pre-existing law.

The rule under that law, was that the general residuary legatee was entitled, in that character, to whatever personal estate (for it was otherwise as to real estate,) might fall into the residue after the making of the will by lapse, invalid disposition, or other accident. *Williams on Executors*, 2 *vol.*, 1250; *Kent's Com.*, 4 *vol.*, 541, *side page; Jarman on Wills*, 1 *vol.*, 304, *note* 1, *and page* 520.

Various reasons were assigned for the adoption of this rule, the most satisfactory of which seems to be the one mentioned by *Williams on Executors*, 2 *vol.*, *page* 1250, viz: " That the residuary clause is under-
' stood to be intended to embrace every thing not
' otherwise effectually given, because the testator is
' supposed to take the particular legacy away from the
' residuary legatee only for the sake of the particu-
' lar legatee; so that, upon failure of the particular
' intent, the court gives effect to the general intent."

But whatever may have been the foundation of this rule, it was undoubtedly well settled and firmly established, and seems to have been invariably recognized and adhered to for a long period of time, unless a different intention was manifested by the testator.

It is however contended, that the residuary clause in the will under consideration, is not a general but a special residuary devise, and the words "not otherwise disposed of in this will," are relied on as having the effect of restricting the devise to a particular residue. The proposition contended for is, that the words refered to render the residuary devise specific in its terms, and confine its operation to that part of

ary devise, so that a legacy lapsing shall pass as in case of intestacy, and not as heretofore to the general residuary devisee; wherefore it is embraced by the provisions of sec. 26th, *Ibid.*

3. Before the Rev. Stat. took effect, the residuary legatee was entitled to whatever personal estate (*aliter* as to real estate) might fall into the residue by lapse, invalid disposition, or other accident. *Williams on Executors, vol.* 2, 1250; *Kent's Com. vol.* 4, 541 side page; *Jarman on Wills, vol.* 1,304,*note* 1, *page* 520; *Cambridge vs. Rouse*, 8 *Ves.* 25. For the reason, see *Williams on Executors, vol.* 2, *page* 1250.

the testator's estate not before *expressed to be given* by the will.

But do these words express any other intention than that which is necessarily implied in every residuary devise or bequest? No matter how general the language of the residuary devise may be, the testator only intends it to operate on that part of his estate not otherwise disposed of in his will. If, after making several devises and bequests, he devises all the residue of his estate, without any allusion whatever to the previous part of his will, does he not mean, that only his estate, not otherwise disposed of in his will, shall pass to the residuary devisee, and is not this meaning as clear and unquestionable as if it had been expressly stated? There does not seem to be any substantial difference between a residuary devise, with or without the words used in this instance by the testator.

In the case of *Cambrige vs. Rouse,* 8 *Ves.* 25, Sir William Grant said: "It had been long settled that 'a residuary bequest of personal estate, carries, not 'only every thing not disposed of, but every thing 'that, in the event, turns out not to be disposed of." Such was also decided to be the meaning and operation of this rule in the cases of *Taylor vs. Lucas,* 4 *Hawks,* 215; *Davis vs. King,* 2 *Ird. Ch.* 203; and *Vick vs. McDaniel,* 3 *How Miss.* 337.

In this case, therefore, the language used in the residuary devise must be construed with reference to this well established doctrine on the subject, and be regarded as embracing, by its terms, not only every thing "not otherwise disposed of in the will," but also every thing which turns out not to be otherwise disposed of by it. The testator no doubt supposed, when he made the residuary devise, that all the previous devises would take effect, and therefore he used the language he did. If, however, that language had been omitted, his expectation that the disposition he had made of that part of his estate, embraced by the previous devises, would be effectual, and his inten-

*4. A residuary bequest of personal estate, before the Rev. Statutes took effect, carried not only every thing not disposed of, but everything that in the event turns out not to be disposed of. Cambridge vs. Rouse, 8 Ves. 25; Taylor vs.Lucas, 4 Hawks 215; Davis vs. King, 2 Ird. ch. 203; Vick vs. McDaniel, 3 How. Miss. 337. Very special words are necessary to change the operation of this rule. Bland vs. Lamb, 2 Jac. & Walk. 406.*

tion to pass to the residuary devisee the balance of his estate only, would be just as manifest. We do not, therefore, deem the words relied upon sufficient to take the residuary devise in question out of the operation of the general rule. It was said by the court, in the case of *Bland vs. Lamb,* 2 *Jac. and Walk.*, 406, that very special words were required to produce such an effect.

But it is also contended, that as the bequest to the wife, which lapsed by her death, consisted of one third part of the testator's personal estate, and the other two thirds of it were bequeathed to the residuary devisees, it follows that this part of the testator's estate was bequeathed to them as tenants in common, and that the share of one dying in the testator's lifetime does not pass to the others, because the testator having given to each a certain proportion of his property, according to the number, it would be inconsistent with such declared intention, to give the survivors a larger proportion, and in support of this doctrine the cases of *Frazer vs. Frazer's executor,* 2 *Leigh,* 642, and *Page vs. Page,* 2 *Per. Williams,* 488, are referred to.

5. Testator bequeathed to the wife one-third part of his personal estate, and the other two-thirds to residuary legatees; the bequest to the wife lapsed by her death before the testator. Held—that the personal property bequeathed to the wife becomes a part of the residuum, & passed under the will to the residuary devisees.

This doctrine, however, applies only to cases where the residue is given to several, as *tenants in common*, and one of them dies in the lifetime of the testator; and not to cases like the present, where the legatee, who dies, was not made a residuary legatee, nor given any interest under the residuary devise.

The reason upon which this doctrine is founded, and which has been already stated, shows plainly that it applies alone to the subject of the residuary devise itself, and to the residuary devisees. If one of them should die in the lifetime of the testator, the survivor would not be entitled to his share of the residuum, because it would not pass to him by the terms of the devise, and also because it would be inconsistent with the evident intention of the testator, to give him a larger proportion of it than he had declared he should be entitled to. Here, however, the resi-

CUNNINGHAM
*vs.*
CUNNINGHAM.

duary devisees are by the expess terms of the devise entitled to the whole of the residuum; and, in our opinion, the personal property and choses in action, bequeathed by the testator to his wife, constituted a part of it, and passed under the will to the residuary devisees.

6. The guardian of C agreed with C's grandfather to resign as guardian that the grandfather might be appointed in his place, and thereby acquire control of the person and estate of C; in consideration whereof the grandfather agreed that he would give to the ward C a child's part of his estate. Held —such a contract is not enforceable, is against the policy of the law, and cannot be countenanced in a court of justice.

It is however contended, that the plaintiff in the court below, whether entitled to any part of the testator's estate or not, under the will, is entitled to one equal third part of it under the agreement made by the testator in his lifetime with his guardian, Nicholas Wolfin.

Conceding that the agrement relied upon has been established by the testimony, the question arises, is it inforceable according to the general principles of the law? Being a mere verbal contract, it is evident that its performance cannot be specifically enforced. But the principal point is, can an action be maintained upon such an agreement, by either party, for a failure to comply with its stipulations?

One of the parties agreed to resign as guardian that the other might be appointed in his place, and thereby acquire the control of the person and estate of the ward; and in consideration thereof the other agreed that he would give to the ward a child's part, or one equal third part of his estate.

Now, could the guardian have been compelled to resign, or, if he had refused, could any action have been maintained against him for the failure to comply with his agreement? This inquiry can only be answered in the negative, for contracts of such a character are against public policy, and cannot be countenanced in a court of justice. As then, the contract could not have been enforced against the guardian, and as it was not performed by him in the lifetime of the testator, there is no consideration to uphold the promise of the latter, and therefore no action can be maintained for his failure to comply with it. We do not deem it necessary to decide whether, had the contract been complied with on the part of

the guardian, such compliance would have constituted a sufficient consideration for the promise made by the testator or not, inasmuch as he did not comply with his part of the contract; and we consider it a very clear proposition, that he could not have been subjected to damages for a failure of performance, nor could a specific execution of his part of the agreement have been enforced. Under these circumstances, to enforce the promise made by the testator, would be giving validity to a contract which was not mutually binding upon the parties. We are therefore of opinion that the plaintiff is not entitled to any part of the testator's estate, either under the will or under this agreement.

We have very little doubt that the testator intended to give him a part of his estate, and was only prevented from doing it by his sudden death. The will which excludes him, was made in a moment of passion, and operates not to the prejudice of the persons by whom the testator considered himself aggrieved, but to the injury of his own grand child, who was the innocent cause of the controversy which resulted so disastrously for him. Under all these circumstances we cannot refrain from an expression of regret that the residuary devisees should have deemed it necessary to appeal from the judgment of the court below, which, at most, adjudged to their deceased brother's only child a very small part of his grand father's estate, and to exact the utmost farthing that the law allows them. But we have decided the law of the case, and the considerations we have mentioned can have no operation, unless it be upon the hearts and consciences of the parties.

Wherefore, the judgment is reversed, and cause remanded with directions to dismiss the plaintiff's petition.